**Gregory PITTS, a Minor, By and Through His Father and Next Friend, George PITTS, Plaintiff–Appellee–Cross–Appellant,**

v.

**AMERICAN SECURITY LIFE INSURANCE COMPANY, Defendant–Appellant–Cross–Appellee.**

**No. 90–1170.**

United States Court of Appeals, Fifth Circuit.

May 21, 1991.

352

Thomas D. Bourdeaux, Bourdeaux & Jones, Meridian, Miss., for defendant-appellant-cross-appellee.

Lawrence E. Abernathy, III, Laurel, Miss., for plaintiff-appellee-cross-appellant.

Before CLARK, Chief Judge, RONEY [1] and DUHÉ, Circuit Judges.

1. Circuit Judge of the Eleventh Circuit, sitting by designation.

DUHÉ, Circuit Judge.

American Security Life Insurance Company contends that the district court erred in holding it liable for the payment of benefits to Gregory Pitts under a group employee insurance policy. It claims that the policy was void *ab initio* because the employer made material misrepresentations that prevented the formation of a valid contract. We affirm.

Kenneth T. McKenzie was the founder and sole proprietor of a plumbing business. Later he included his two sons, Patrick L. McKenzie and Kenneth D. McKenzie, as partners in the business. In addition, he employed his sister, Diane McKenzie Rose, as secretary and bookkeeper.

Kenneth D. McKenzie left the business in 1974 to establish his own company, United Plumbing Company. Meanwhile, the other family members continued in the original business, eventually incorporating it as McKenzie, Inc. For its employees and their families, the company provided a health insurance policy underwritten by Lincoln National Life Insurance Company. The agent who sold this policy was George Melichar.

In 1983, Kenneth T. McKenzie, an insured on the Lincoln National policy, began to suffer with serious health problems. His wife, a dependent on the same policy, also had health problems. The couple's significant medical expenses resulted in large claims against Lincoln National. In 1985, the insurer doubled its premiums for employees of McKenzie, Inc.

As Kenneth T. McKenzie's health worsened, so did the finances of McKenzie, Inc. The company thus sought less expensive health coverage. Company officers called George Melichar, the agent who had sold the company its Lincoln National policy. Melichar arranged for the company to purchase a new group policy with American Security Life Insurance Company. That policy, numbered 8148 and issued on July 26, 1985, is the subject of this case.

The policy required that one hundred percent of the full-time employees—those working at least thirty hours per week—must be included in the group and that the employer must pay one hundred percent of all employee premiums. It also specified that the insured group must consist of at least ten employees; otherwise, American Security could terminate the policy.

By October 1985, McKenzie, Inc. tottered on the brink of dissolution. A surety took over the company's primary contract, and several employees left. In fact, only four employees remained as insureds under the group policy. American Security notified McKenzie, Inc. that its group coverage would soon end under the terms of the policy.

Members of the McKenzie family were extremely concerned about losing health coverage for Kenneth T. McKenzie and his wife. In an effort to avoid termination of the policy, Diane McKenzie Rose told Melichar that McKenzie, Inc. planned to merge with United Plumbing. Together, she said, the two companies would have the ten employees required for continued coverage.

According to Diane McKenzie Rose, both Melichar and American Security approved of this solution. American Security contends, however, that it learned only that McKenzie, Inc. planned to change its name to United Plumbing Company. On November 19, 1985, United Plumbing assumed policy 8148.

Diane McKenzie Rose submitted a list of ten purported employees of United Plumbing. The testimony at trial revealed that not all of these individuals were employees of United Plumbing pursuant to the definition of an employee under the policy. Moreover, some of the individuals listed were not employees of either McKenzie, Inc. or United Plumbing. The minimum requirement of ten employees was clearly not fulfilled.

One of the ten individuals listed was Gregory Pitts, the plaintiff in this case. Pitts was a bona fide employee of United Plumbing when that company assumed the policy in November 1985. American Security argued at trial that if it had known of the misrepresentation implicit in the list of ten purported employees, it would have cancelled the policy in December 1985.

In late January 1986, Gregory Pitts was seriously injured in an accident. United Plumbing submitted claim forms for his medical expenses, and American Security promptly paid these expenses under the terms of the policy. American Security notified United Plumbing, however, that it intended to increase its premium rate beginning in August 1986.[2] It planned to increase the rate per month for each employee from $126.22 to approximately double that amount.

Still suffering from financial difficulties, the McKenzie family decided to seek less expensive coverage. The new policy, of course, would not have included Gregory Pitts, who had been totally disabled by the accident. If policy number 8148 were terminated, Gregory's father, George Pitts, would thus have been faced with virtually insurmountable medical expenses.

Desperate to keep the policy in force, George Pitts agreed to pay the entire amount of the increase if United Plumbing would continue to pay the original amount of the premiums. The testimony at trial revealed that United Plumbing paid American Security the entire new amount of premiums for August, September, and October of 1986. For all three months, George Pitts reimbursed United Plumbing for the amount of the increase and paid the original premium amount for Gregory Pitts.

After three months, George Pitts could no longer sustain the financial burden of paying about $1,500 per month to keep the American Security policy in effect. From November 1986 through March 1987, he paid United Plumbing $126.22, the original amount of the monthly premium before American Security had increased its rate. For five months, American Security received from United Plumbing a check for $126.22 per month—a mere five percent of what the policy originally required. American Security held these checks instead of cashing them. Finally, in March 1987, American Security decided to terminate the policy effective June 30, 1987. Pursuant to the terms of the policy, the insurer extended benefit payments for three months after notice of termination.

After giving notice of termination, American Security cashed the five checks it had received from United Plumbing from November 1986 through March 1987. The insurer rationalized that since it had already paid over $100,000 in medical benefits, it could properly keep the premium payments—even though they were inadequate to keep the policy in force—to recoup some of its losses on the policy.

Just before the end of the three-month period of extended benefit payments, George Pitts sought injunctive relief against American Security in a Mississippi state court. Pitts claimed that since his son's right to benefits had vested, American Security could not terminate the policy. American Security removed the suit to federal district court.

The district judge granted partial summary judgment on Pitts's request for punitive damages. American Security then filed a third-party action against its insurance agent, Melichar, claiming that Melichar had colluded with members of the McKenzie family to defraud the insurer. After a bench trial, the judge exonerated Melichar.

The judge found that Pitts was entitled to continued benefits under the policy but not to attorney's fees. He concluded that Pitts was injured before cancellation of the policy and that he had a reasonable expectation of benefits under the policy. Applying the theory of equitable estoppel, the judge also concluded that by accepting premium payments for only one employee for five months, American Security effectively agreed to provide coverage to a group of less than ten employees.

*Applicable Law*

This matter is governed by the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. § 1001, *et seq.* (1988).

---

**2.** To reflect its current underwriting risk, American Security increased the premium rate in accordance with the terms of the policy.

ERISA creates federal causes of action for recovery of benefits under employee welfare and pension plans. *See* 29 U.S.C. § 1132(a)(1)(B) (1988).

In enacting ERISA, Congress broadly preempted state law, including all laws, decisions, rules, regulations, and other state acts having the effect of law. *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 2191, 100 L.Ed.2d 836 (1988); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Congress intended for courts to fashion a federal common law governing employee benefit plans. *See In re HECI Exploration Co.*, 862 F.2d 513, 523 & n. 18 (5th Cir.1988).

This development of federal common law, however, may be informed by state law. *Id.* at 523 & n. 19. Any such application of state law must, of course, be consistent with the policy of the federal statute. *Id.; Pennzoil Co. v. Federal Energy Regulatory Comm'n*, 645 F.2d 360, 385 (5th Cir.1981), *cert. denied*, 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982). The district court in this case recognized its mandate to fashion a federal common law consistent with the policy of ERISA.

*The Insurance Contract: Void or Voidable?*

▆ American Security argues that its policy number 8148 was void *ab initio*, or null from the beginning, because employees of McKenzie, Inc. made material misrepresentations that prevented the formation of a valid contract. The Mississippi Supreme Court has held that a material misrepresentation of fact made by an employer in applying for insurance may invalidate the policy if the truth would have caused the insurer to deny coverage.[3]

The district court found that if American Security had known the truth—that the insured did not have ten bona fide employees who were eligible for insurance—it would have terminated the policy in December 1985, one month before Pitts was injured. The court reached this conclusion by analyzing the previous reaction of the company to the news of a decrease in the number of employees at McKenzie, Inc.[4]

Despite its conclusion that McKenzie, Inc. made material misrepresentations, the district judge did not hold that the insurance contract was void *ab initio*. Neither did he hold, however, that the policy was voidable. Instead, he somewhat enigmatically announced, "[T]his court is not convinced that the void *ab initio* approach is proper under these circumstances."

The judge cited two Mississippi cases as support for his conclusion that Pitts was entitled to receive benefits.[5] Each case concerned a contract that was voidable, not void. In each case the court held that even though one party had rightfully avoided the contract before the medical claim arose, public policy prevented the insurer from denying benefits to the employee who had reasonably relied on the coverage.

Implicit in the judge's words and actions is the conclusion that the insurance policy was voidable, but not void *ab initio*. Although the judge made no specific factual findings that support that conclusion, this omission does not require us to abandon our analysis. "If a trial judge fails to make a specific finding on a particular fact, the reviewing court may assume that the court impliedly made a finding consistent with [the] general holding so long as the implied finding is supported by the evidence." *Goode v. Herman Miller, Inc.*,

---

**3.** *See Sanford v. Federated Guaranty Ins. Co.*, 522 So.2d 214, 217–18 (Miss.1988). Under *Sanford*, an insurer must show (1) that statements on which it relied were not substantially true, (2) that it entered into the insurance contract because of its mistake of fact, and (3) that if it had known the truth, it would not have issued the policy. *Id.*

**4.** The court noted that American Security had decided to terminate the policy in November 1985 when it learned that McKenzie, Inc. no longer had ten employees. The only reason that the insurer decided to continue coverage was that Diane McKenzie Rose claimed that the company, through its association with United Plumbing, could muster ten employees, thus meeting the requirements of continued coverage.

**5.** The court relied on *Brown v. Blue Cross Blue Shield, Inc.*, 427 So.2d 139 (Miss.1983) and *Gulf Guar. Life Ins. Co. v. Kelley*, 389 So.2d 920 (Miss.1980).

811 F.2d 866, 871 (5th Cir.1987) (quoting *In re Texas Mortgage Servs. Corp.*, 761 F.2d 1068, 1075 n. 12 (5th Cir.1985)).

The record in this case contains evidence that supports the implied finding that through its agents, American Security had knowledge that McKenzie, Inc. had failed to meet the requirements of the policy. For example, Carolyn Copenhaver, a quality control supervisor for American Security, testified about a phone call that she made to McKenzie, Inc. to determine whether the company's application for insurance was in order.

Tina Lowery, a secretary for McKenzie, Inc., answered the call. Since the group administrator was out of the office, Lowery attempted to answer Copenhaver's questions about the company and its employees. Copenhaver asked Lowery why her name was omitted from the application for insurance. Lowery responded that she was covered through her spouse's insurance. This response, alone, should have alerted Copenhaver to the probability that the employer was not paying one hundred percent of the premiums, as required by the policy. Why would an employee turn down free coverage merely because she was covered as a dependent on another policy? In the same conversation, Lowery said that she was a full-time employee.

The next day, Copenhaver reached Kenneth Smith, the group administrator. According to Copenhaver, Smith told her that Lowery was excluded from the plan because she sometimes worked less than thirty hours a week and thus failed to meet the policy definition of a full-time employee. This statement was contradictory to the information that Lowery had given Copenhaver one day earlier. Even if these two conversations occurred exactly as Copenhaver testified, she should have investigated the discrepancy.

Copenhaver knew or should have known that McKenzie, Inc. was probably not fulfilling the requirements of the policy. Because Copenhaver was an agent of American Security, her knowledge can be imputed to the company.

■ As the appellant candidly admitted in oral argument, if the policy was merely voidable, then Pitts is entitled to coverage for all medical expenses attributable to the injury he sustained in January 1986. The district court cogently summarized the reasons that Pitts should prevail: (1) Pitts had a reasonable expectation of continued benefits; (2) the entitlement to benefits vested at the time of the injury, which was before American Security decided to cancel the policy; (3) the total disability resulting from the accident precluded Pitts from obtaining other coverage; and (4) Pitts was innocent of any wrongdoing. *See Brown v. Blue Cross Blue Shield, Inc.*, 427 So.2d 139, 141 (Miss.1983); *Gulf Guar. Life Ins. Co. v. Kelley*, 389 So.2d 920, 922 (Miss. 1980); Keeton, *Insurance Law Rights at Variance with Policy Provisions*, 83 Harv. L.Rev. 961, 967 (1970).

*Alternative Basis for Allowing Benefits*

■ For the reasons discussed in the previous section, we believe that the insurance contract between United Plumbing and American Security was voidable, but not void. Yet whether the policy was voidable or void *ab initio*, we recognize an alternative basis for affirming the district court's judgment: American Security has effectively waived its right to assert a defense to liability.

Pitts argued the theory of waiver at the district court level. The court characterized the theory as one of equitable estoppel. The Restatement of Contracts, in discussing the elements of waiver or estoppel, explains, "The power of avoidance for fraud or misrepresentation is lost if after acquiring knowledge thereof the injured party unreasonably delays manifesting to the other party his intention to avoid the transaction." Restatement of Contracts § 483 (1932). Similarly, the Restatement of Restitution provides, "An unreasonable delay in manifesting an avoidance of a transaction after the acquisition of knowledge of the facts terminates the power of rescission for fraud or mistake ... if the interests of the transferee or of a third person are harmed or were likely to be

harmed by such delay." Restatement of Restitution § 64 (1937).

■ Although *waiver* and *estoppel* are sometimes used interchangeably, especially in the law of insurance, there is a subtle but significant legal distinction between the two. *See Intel Corp. v. Hartford Accident & Indem. Co.*, 692 F.Supp. 1171, 1179 (N.D.Cal.1988). Strictly defined, *waiver* describes the act, or the consequences of the act, of one party only, while *estoppel* exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's act were repudiated. *Id.* at 1179 n. 8. In contrast to waiver, then, estoppel involves some element of reliance or prejudice on the part of the insured before an insurer is foreclosed from raising a ground for denial of liability that was known at an earlier date. *See* Restatement (Second) of Torts § 894(1) (1977).

■ This Court concludes that the proper approach is to focus on the unilateral action of the insurer in failing to raise at the outset a known defense to the claim. *Waiver* is the voluntary or intentional relinquishment of a known right. *See General Elec. Supply Co. v. Utley–James of Texas, Inc.*, 857 F.2d 1010, 1013 n. 1 (5th Cir.1988); *Peterson v. S.S. Wahcondah*, 331 F.2d 44, 48 (5th Cir.1964); 16B Appleman, *Insurance Law and Practice*, § 9086, at 536–39 (1981). American Security accepted insurance premiums from United Plumbing for five months after learning beyond all doubt that Pitts was the only employee remaining on the policy. It later cashed these checks to recoup some of its losses on the policy. These actions constitute a classic example of waiver.

The doctrine of waiver is already an important component of insurance law. *See Washington v. Allstate Ins. Co.*, 901 F.2d 1281 (5th Cir.1990); *Ideal Mutual Ins. Co. v. Myers*, 789 F.2d 1196 (5th Cir.1986); 16B

Appleman, *Insurance Law and Practice*, § 9086, at 536–39 (1981). For example, an insurer automatically waives the terms of a policy if it defends an insured without a reservation of its rights. *See Myers*, 789 F.2d at 1201.

After American Security learned that the policy requirements had been breached, it could have protected any possible right to deny liability by executing an ordinary reservation of rights. Instead, it accepted premium payments and paid medical benefits without reservation. It thus waived its right to assert a defense to its liability under the policy.

Even though the district court explained its decision in terms of estoppel and not waiver, its judgment is nevertheless correct. "[W]hen the judgment of a district court is correct, it may be affirmed for reasons not given by the court and not advanced to it." *Laird v. Shell Oil Co.*, 770 F.2d 508, 511 (5th Cir.1985).

*Punitive Damages*

■ Pitts originally sought punitive damages under Mississippi law permitting such damages for bad faith breach of contract. Before trial, the Supreme Court issued its decision in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). In *Dedeaux*, the Court soundly rejected the argument that the Mississippi law of bad faith breach of contract was not preempted by ERISA. *See id.* at 55–57, 107 S.Ct. at 1557–58. Based on this holding, the district court granted partial summary judgment in favor of American Security on the issue of punitive damages.

We agree with the district court's analysis of this issue. United Plumbing intended to establish an employee welfare benefit plan for the benefit of its employees. ERISA defines such a plan broadly.[6] *Dedeaux* dispelled any possible doubt about ERISA's preemption of the common law of

---

6. "The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing its participants or their

beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment...." 29 U.S.C. § 1002(1) (1988).

contracts in Mississippi. *See Dedeaux*, 481 U.S. at 55–57, 107 S.Ct. at 1557–58. We conclude, therefore, that the district court correctly applied ERISA in granting summary judgment in favor of American Security on the state law claim for punitive damages.

### Attorney's Fees

In the alternative, Pitts argues that if this Court concludes that ERISA governs the controversy, then he is entitled to attorney's fees under our decision in *Ironworkers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir.1980). In *Bowen*, we identified five factors that a judge should consider in determining whether to award attorney's fees under section 502(g) of ERISA [7]: (1) the degree of the opposing party's culpability or bad faith, (2) the ability of the opposing party to satisfy an award of attorney's fees, (3) whether an award of attorney's fees would deter other persons who will be acting under similar circumstances, (4) whether the party seeking attorney's fees sought to benefit all participants in an ERISA plan or to resolve a significant legal question under ERISA, and (5) the relative merits of the parties' positions. *Bowen*, 624 F.2d at 1266.

We review the district court's decision only for an abuse of discretion. *See* 29 U.S.C. § 1132(g) (1988); *Bowen*, 624 F.2d at 1266. The district court carefully considered the five *Bowen* factors and clearly enunciated its reasons for denying attorney's fees. As noted by the court, there was no showing of bad faith or culpability on the part of American Security. In addition, as the court explained, Pitts failed to show that American Security was able to satisfy such an award.

None of the factors clearly supports an award of attorney's fees for Pitts. In essence, neither party was particularly culpable, neither party was shown to be capable of paying the award, no deterrent effect would flow from an award, no participants of an ERISA plan other than Pitts stand to benefit, no significant legal question under ERISA has been resolved, and there is some merit to each party's position. We therefore find no abuse of discretion in the district court's denial of attorney's fees.

### Conclusion

We conclude that the insurance policy issued by American Security to United Plumbing was voidable. Since the policy, however, was in full force at the time Pitts was injured, his benefits under the policy vested. He is thus entitled to coverage for all medical expenses resulting from the injury. Moreover, regardless of whether the policy was voidable or void *ab initio*, American Security waived any possible defense to liability by accepting premiums from Pitts for five months after it learned that only one employee remained on the policy.

The district court correctly determined that ERISA governs this controversy and preempts Mississippi contract law allowing punitive damages for bad faith. Finally, the court did not abuse its discretion in denying attorney's fees under ERISA.

The decision of the district court is AFFIRMED.

---

7. That section provides, "In any action under this subchapter by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g) (1988).