**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 22, 2009

No. 09-60042
Summary Calendar

Charles R. Fulbruge III
Clerk

CARLENE GRAHAM

Plaintiff-Appellant

v.

METROPOLITAN LIFE INSURANCE COMPANY

Defendant-Appellee

Appeal from the United States District Court for the
Southern District of Mississippi
USDC No. 4:07-CV-164

Before GARZA, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Carlene Graham ("Graham") appeals from the district court's grant of summary judgment in Metropolitan Life Insurance Company's ("MetLife") favor, dismissing Graham's ERISA and state law claims which alleged that MetLife did not pay the full amount owed to Graham as the beneficiary of her deceased husband's life insurance policy. Holding that the district court properly determined that the life insurance benefits were provided under an ERISA plan,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

that there was no abuse of discretion in the plan administrator's determination that Graham was not entitled to an additional $45,000, and that Graham did not show she was entitled to attorney's fees, we affirm.

# I

Carlene Graham's deceased husband, Robert Graham, was employed by Georgia-Pacific Corporation ("Georgia-Pacific") until his retirement in 2002. Robert Graham had life insurance under Georgia-Pacific's LifeChoices benefits program ("LifeChoices"). Georgia-Pacific initially funded the life and accidental death portion of the LifeChoices program through Aetna, but beginning in 2002 those benefits were funded by MetLife. Under the plan documents, Georgia-Pacific is the plan sponsor, administrator, and record keeper. Sykes HealthPlan Service Bureau Inc. ("SHPS") is Georgia-Pacific's third-party administrator, with responsibility for maintaining eligibility, enrollment, and coverage amount records for participating employees and retirees. Georgia-Pacific designated MetLife as the benefits claims administrator for the life insurance portion of LifeChoices. MetLife processes and pays claims but relies on Georgia-Pacific and SHPS for verification of eligibility and coverage.

Graham's husband died in February 2005. Graham was named as the beneficiary of her husband's LifeChoices life insurance benefits. She submitted appropriate documentation to collect benefits. Georgia-Pacific and SHPS validated the claim and sent documentation to MetLife that Graham's husband had $8,000 in retiree life insurance coverage. MetLife processed a claim payment for $8,107.84, representing the $8,000 life insurance benefit plus interest. Shortly after receiving the payment, Graham contacted MetLife and stated that a Georgia-Pacific human resources employee, Sherry Arrington ("Arrington"), had notified Graham that her husband was covered for $45,000.[1]

---

[1] There is some dispute in the record whether the amount was $45,000 or $48,000. Graham initially claimed coverage was for $48,000, but her suit alleges $45,000 of coverage.

Arrington maintains that she explained to Graham in writing that "*if* Mr. Graham was approved for waiver of premium that he would be allowed to keep his full amount of $48,000." Such a waiver allows active-employee coverage to continue without premium payments if the covered employee becomes disabled. Neither Georgia-Pacific, SHPS, nor MetLife had any record of an approved disability premium waiver. Graham was told that to pursue her claim for additional benefits, she needed to submit proof that her husband had an approved premium waiver for $45,000. In November 2005, MetLife denied additional coverage but invited Graham to submit any documentation supporting her claim.

In July 2006, Graham submitted to MetLife an Aetna premium waiver form and attending physician's statement dated February1999. The form had Arrington's signature on the employer portion of the form showing that Robert Graham had $45,000 of coverage through Fort James Corporation and was seeking a premium waiver for disability.[2] Graham offered no proof that the premium waiver form was ever submitted to or approved by Aetna (or anyone else), nor that any coverage, if it existed, transferred from Aetna to MetLife. MetLife provided this documentation to Georgia-Pacific. Georgia-Pacific contacted Aetna but Aetna had no record of a premium waiver for Graham's husband. Georgia-Pacific determined that it could not authorize payment without proof of an approved premium waiver and MetLife closed the claim.

Graham sued in Mississippi state court for breach of contract and bad faith. MetLife removed and Graham then amended her complaint to add claims under ERISA. The district court granted MetLife's motion for summary judgment finding that Georgia-Pacific's LifeChoices program is an ERISA plan that preempted Graham's state law claims, that Graham failed to prove she was

---

[2] Graham was previously employed by Fort James Corporation, which was subsumed by Georgia-Pacific in 2000.

entitled to the claimed benefits under 29 U.S.C. § 1132(a)(1)(B), and that she was not entitled to attorney's fees under 29 U.S.C. § 1132(g)(1). *Graham v. Metro. Life Ins. Co.*, No. 4:07CV164 DPJ-JCS, 2009 WL 73802 (S.D. Miss. Jan. 8, 2009).

## II

Graham contends that the LifeChoices policy is not an ERISA plan. She relies on excerpts from the deposition of MetLife's corporate deponent who had trouble answering some questions about the claims procedure relevant to Graham's situation. From this testimony, Graham argues that a fact question existed whether a reasonable person could ascertain the existence of an ERISA plan. Graham also contends that she was entitled to have a jury determine whether the LifeChoices plan qualified as an ERISA plan. We find both contentions without merit.

This court uses a three-prong test to determine whether an employee benefit program is an ERISA plan. *Shearer v. Southwest Serv. Life Ins. Co.*, 516 F.3d 276, 279 (5th Cir. 2008). "To be an ERISA plan, an arrangement must be (1) a plan, (2) not excluded from ERISA coverage by the safe-harbor provisions established by the Department of Labor, and (3) established or maintained by the employer with the intent to benefit employees.[3] *Id.* (citation omitted).

While Graham is correct that the "existence *vel non* of a plan is a question of fact," the appropriate question on summary judgment is whether the "evidence would have allowed a reasonable trier-of-fact to find that an ERISA plan did not exist." *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 235 (5th Cir. 1995). Nothing requires that this determination be made by a jury;

---

[3] We see no evidence that the second and third prongs of this test were not met, but we decline to discuss them because Graham made no argument before either the district court or this court on this issue, and accordingly, it is waived. *See, e.g.*, *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007); *Askanse v. Fatjo*, 130 F.3d 657, 668 (5th Cir. 1997).

indeed, ERISA claims do not entitle a plaintiff to a jury. *Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1994). To determine whether a plan exists, "a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993). A reasonable person could make this determination by reviewing Georgia-Pacific's LifeChoices Summary Plan Description ("SPD") and the MetLife certificate of insurance for group term life benefits issued to Georgia-Pacific and distributed to its employees. The SPD shows that the intended benefits of the LifeChoices plan include, among other things, life insurance coverage, that participants can designate beneficiaries, and that Georgia-Pacific pays premiums and is the plan sponsor and administrator. The MetLife certificate of insurance, distributed with a memorandum from Georgia-Pacific shows that MetLife processes claims and pays life insurance benefits for plan participants. Thus, there is no question of material fact that would allow a reasonable fact finder to determine that an ERISA plan did not exist.[4]

## III

Graham contends that even if her state law claims are preempted by ERISA, the evidence nonetheless shows she is entitled to receive $45,000 in life insurance benefits under 29 U.S.C. § 1132(a)(1)(B). According to Graham, the

---

[4] Graham's state law claims for breach of contract and bad faith are preempted. Graham makes no argument to the contrary, nor could she. ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to an employee benefit plan." ERISA § 504(a); 29 U.S.C. § 1144(a). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remed[ies] conflicts with the clear congressional intent to make the ERISA remed[ies] exclusive and is therefore preempted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). The breach of contract claim is preempted because it duplicates the ERISA cause of action for benefits under 29 U.S.C. § 1132(a)(1)(B). *See, e.g.*, *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006). Her bad faith claim is likewise preempted. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51 (1987) (finding bad faith claim under Mississippi law not saved from preemption).

1999 premium waiver form that she produced is proof of her entitlement. Graham also contends that the district court should have reviewed MetLife's denial of the claim *de novo*, rather than for abuse of discretion, because MetLife had no discretion to determine eligibility for benefits.

We review the district court's grant of summary judgment in ERISA cases *de novo*, applying the same standard as the district court. *Wade v. Hewlett-Packard Dev. Co. Short Term Disability Plan*, 493 F.3d 533, 537 (5th Cir. 2009). A district court reviews *de novo* an administrator's denial of benefits under an ERISA plan unless the plan gives the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Dutka v. AIG Life Ins. Co.*, 573 F.3d 210, 212 (5th Cir. 2009) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "Regardless of an administrator's ultimate authority to determine benefit eligibility, however, factual determinations made by the administrator during the course of a benefits review will be rejected only upon the showing of an abuse of discretion." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999).

Here, the district court reviewed the denial of benefits under an abuse of discretion standard because it found that the decision to deny the claim turned on the factual question whether Robert Graham obtained a premium waiver for coverage of $45,000. *Graham*, 2009 WL 73802 at * 4. We agree that this is a factual question properly reviewed for abuse of discretion.[5]

---

[5] Moreover, both the Georgia-Pacific SPD and the MetLife group life insurance policy issued to Georgia-Pacific include a grant of discretionary authority. The SPD states that Georgia-Pacific has "complete discretionary authority to control the operation and administration of the plan . . . including, but not limited to, the power to construe the terms of the plan, to determine status and eligibility for benefits . . . ." The MetLife policy states, in relevant part: "[T]he Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits."

In applying the abuse of discretion standard to an administrator's factual determinations we analyze whether the administrator acted arbitrarily or capriciously. "If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 273 (5th Cir. 2004). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Under 29 U.S.C. § 1132(a)(1)(B), Graham bears the initial burden of proving entitlement to ERISA benefits. *See Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 (5th Cir. 1993). Georgia-Pacific told Graham that to prove her entitlement to the additional $45,000 in benefits, she had to substantiate the existence of an approved premium waiver. Graham does not argue that the terms of the LifeChoices plan did not require such proof. Rather, she contends that the record is sufficient to prove her entitlement to $45,000. Graham's only evidence was a February 1999 physician statement and premium waiver form filled out nearly six years before his death by her husband's previous employer, indicating a $45,000 life insurance policy under a plan funded by Aetna, not MetLife. Graham offered no evidence that the form was ever submitted to her husband's previous employer or Georgia-Pacific or to any insurer. Nor did she offer any evidence that her husband had received a premium waiver approval. The record shows that Georgia-Pacific, SHPS, and MetLife investigated whether a premium waiver had ever been approved, including by contacting Aetna. Absolutely no evidence exists that any of these entities received Robert Graham's premium waiver form, let alone approved it. We find no abuse of discretion in the determination that Graham failed to show that a valid, approved premium waiver existed entitling her to an additional $45,000 of life insurance benefits.

**IV**

Finally, Graham contends that the district court abused its discretion in denying her request for attorney's fees under 29 U.S.C. § 1132(g)(1). Section 1132(g)(1) provides that a court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." The district court's denial of attorney's fees and costs under ERISA is reviewed on appeal for abuse of discretion. *Bannister v. Ullman*, 287 F.3d 394, 408 (5th Cir. 2002). In conducting such review, we consider the following factors:

> (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorney's fees; (3) whether an award of attorney's fees would deter other persons who will be acting under similar circumstances; (4) whether the party seeking attorney's fees sought to benefit all participants in an ERISA plan or to resolve a significant legal question under ERISA; and (5) the relative merits of the parties' positions.

*Pitts ex rel. Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 358 (5th Cir. 1991). No single factor is determinative, but "together they are the nuclei of concerns" guiding our review. *Bannister*, 287 F.3d at 409.

The district court denied attorney's fees, stating that Graham's claim was lacking under these factors. We agree and find no abuse of discretion. MetLife did not act in bad faith, an award would have no deterrent effect, Graham admits that her case raises no important questions under ERISA, nor does it seek to benefit all plan participants. At most, the only factor that weighs in favor of attorney's fees is that MetLife presumably has a greater ability to pay them than does Graham.

**V**

For the foregoing reasons, we AFFIRM the judgment of the district court.